IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY PINCUS, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHUBB GROUP OF INSURANCE COMPANIES | : | NO. 08-1483 |
| and GREAT NORTHERN INSURANCE COMPANY | : | |

**M E M O R A N D U M   A N D   O R D E R**

Ditter, J.                                                                                                          March 27, 2009

This case comes before me on an insurer's motion that will be treated as one for summary judgment. The plaintiff contends that the defendant failed to defend him and failed to provide indemnification when he was sued in state court for various acts of intentional, harmful conduct. For the reasons that follow, I will grant the defendant's motion.

The plaintiff, Jeffrey Pincus, alleges that the defendant, Great Northern Insurance Company,[1] wrongfully failed to provide defense and liability coverage for claims against him asserted in state court by a woman who contended that Pincus had sexually assaulted and raped her and that she suffered physical and emotional damages as a result. He alleges that he incurred legal costs of $59,800 to defend those claims and paid $100,000 to settle the matter. Furthermore, Pincus asserts a claim for "bad faith" against Great Northern. Great Northern contends that contract terms and exclusion provisions in the policies preclude defense and

---

[1] Pincus also names "Chubb Group of Insurance Companies" as a defendant. However, as noted by Great Northern in its motion, "Chubb Group of Insurance Companies" is merely a descriptive phrase that refers to several separate companies under common ownership; it is not an entity or insurance company itself. (Doc. No. 3-3 at 1 n.1.) This is not disputed by Pincus in his reply.

liability coverage for Pincus and filed a motion to dismiss or, in the alternative, for summary judgment.

Having carefully considered the defendant's motion (Doc. No. 3), the plaintiff's response (Doc. No. 4), and the defendant's further reply (Doc. No. 5), I make the following findings:

1. Federal Rule of Civil Procedure 12(d) provides that if, on a motion to dismiss under Rule 12(b)(6) "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. All parties shall be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

2. I accepted and considered documents outside of the pleadings in my review of Great Northern's motion, including copies of the insurance policies certified as true and complete by the defendant (Doc. No. 3-4). Therefore, I am treating Great Northern's motion as a motion for summary judgment. Given that the motion was framed in the alternative as a motion for summary judgment, that Pincus filed a response to the motion, and that Pincus did not object to the submission of documents outside the pleadings, I find that the defendant was given a reasonable opportunity to respond. *See Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).

3. The rules governing a motion for summary judgment are well-established. It should be granted if the moving party can show there is no genuine dispute as to the material facts and that the movant is entitled to judgment as a matter of law. However, it must be denied if a material fact is in dispute so that a reasonable jury could find for the non-moving party. Finally, all ambiguities and reasonable inferences must be drawn in favor of the non-moving party.

4. Under Pennsylvania law, an insurer's duty to defend an action brought by a third party against its insured is determined solely by the factual allegations in the third party's complaint. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). "It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend." *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004). An insurer is obligated to defend its insured if the complaint alleges conduct that may potentially come within the policy's coverage. *Id*. Although similar, an insurer's duty to indemnify is more limited. An insurer must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy. *Britamco Underwriters, Inc. v. C.J.H., Inc.,* 845 F. Supp 1090, 1094 (E.D. Pa. 1994).

5. The interpretation of an insurance policy is a question of law for the court, which must read the policy as a whole and construe it according to the plain meaning of its terms. *Id.* at 1093.

6. The Great Northern insurance policies state, in pertinent part, that Great Northern will "cover damages a covered person is legally obligated to pay for personal injury. . . caused by an occurrence, unless. . . an exclusion applies."[2] (Doc. No. 3-4 at 26; *see also* Doc. No. 3-4 at 63.)

---

[2] Pincus owned both a primary policy and excess policy from Great Northern. Although the excess policy defines "occurrence" as "an accident" (Doc. No. 3-4 at 63), the primary policy defines "occurrence" as "a *loss* or accident" (Doc. No. 3-4 at 10) (emphasis added). Resolving all ambiguities in favor of the plaintiff, it is possible to construe the alleged events as a "loss" to Pincus and thus an "occurrence" under the primary policy. The plain meaning of "loss" is "an amount or number lost" or "the state of being deprived of or of being without something that one has had." Merriam-Webster Online Dictionary, http://www.merriam-webster.com (last visited Mar. 26, 2009). Here, the underlying complaint is alleging facts that suggest an amount lost or deprivation to Pincus, specifically $50,000 for each count, for which Pincus anticipated a further loss in the form of defense costs. Great Northern argues that the term "loss" applies only to the house and contents portion of the primary policy, not the liability portion. Yet, the term "loss" is included in the definition of "occurrence" in the introduction to the policy (Doc. No. 3-4 at 10) and it sensibly applies to the entire policy; the term "loss" is used several times throughout the liability portion of the policy – for example, the primary policy describes the amount of coverage for personal liability under the heading "Payment for a Loss" (Doc. No. 3-4 at 26); and the term's plain meaning fits the facts and circumstances in this matter. At least with respect to defense coverage under the primary policy, the analysis does not stop with the definition of "occurrence" and must continue with a review of any applicable exclusions.

Furthermore, Great Northern "will defend a covered person against any suit seeking covered damages for personal injury." (Doc. No. 3-4 at 27, 65.)

7. Two exclusions in the policies are relevant to this matter. First, the intentional acts exclusion provides that Great Northern "do[es] not cover any damages arising out of an act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected." (Doc. No. 3-4 at 32, 67.)  Second, the business pursuits exclusion provides that Great Northern "do[es] not cover any damages arising out of a covered person's business pursuits, investment or other for-profit activities, for the account of a covered person or others, or business property." (Doc. No. 3-4 at 32, 67.)

8. I find that Great Northern did not have a duty to defend Pincus, because the underlying state court complaint asserts conduct by Pincus that is excluded from coverage by Great Northern's policies.

9. The underlying state court complaint alleges that Pincus intentionally lured a woman into a limousine with misrepresentations that she would be performing modeling work, plied her with alcohol, inappropriately touched and groped her, refused to take her home despite her repeated requests that he do so, and took her into his apartment where he pinned her wrists to the floor and violently raped her. (Doc. No. 3-5 at 4-19.) The complaint asserts a distinct pattern of intentional, forcible conduct that resulted in harmful and offensive contact with the woman's body.

10. In four counts, the underlying complaint charges sexual assault and battery (Count I), fraudulent misrepresentation (Count II), false imprisonment (Count IV), and intentional infliction of emotional distress (Count V).[3] I find that Pincus' alleged conduct in these counts falls under the policies' intentional acts exclusion[4] and therefore does not trigger the policies' coverage.

11. The conclusory allegation of "negligence" in paragraph 51 of the underlying complaint (Doc. No. 3-5 at 17) is irrelevant, because "[t]he mere pleading of negligence does not control whether coverage has been triggered." *See Allstate Ins. Co. v. Vargas*, No. 07-1916, 2007 U.S. Dist. LEXIS 77602, at *5 (E.D. Pa. Oct. 17, 2007). I must look to the actual factual allegations in the underlying complaint and, here, the allegations in Counts I, II, IV, and V sound solely in intentional tort.

12. Pincus cites two cases, *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 929 (Pa. Super 2004) and *Aetna Life and Cas. Co. v. Barthelemy*, 33 F.3d 189, 190-91 (3d Cir. 1994), to support his claim that Great Northern had a duty to defend and indemnify him. Both cases are distinguishable because each considers an underlying complaint where the allegations sound in negligence. *See Erie Ins. Exchange,* 851 A.2d at 929 (the underlying complaint alleged that a babysitter "negligently, carelessly, or recklessly dropped [a child] on two occasions, and then failed to provide care to or summon assistance for the injured child"); *Aetna Life and Cas. Co.,* 33 F.3d at 190-91 (regarding sexual relations between two students, the underlying complaint

---

[3] Count III of the complaint charges that the modeling agency for whom the victim believed she was working was negligent for failing to warn her and protect her from Pincus. It makes no claim against Pincus and therefore does not trigger coverage under the policies here involved.

[4] It is unnecessary for me to determine whether the alleged conduct in these counts also falls under the business pursuits exclusion, and I express no opinion on its applicability to these counts.

alleged that one student engaged in "negligent or reckless conduct" and that his conduct was not intentional; it did not aver any forcible conduct with regard to the sexual relations).  Here, the factual allegations in Counts I, II, IV, and V do not suggest negligence but rather a pattern of intentional conduct by Pincus.

13.  With respect to Count VI (common carrier liability) of the underlying state court complaint, I find that Pincus' alleged conduct falls under the policies' business pursuits exclusion.  The state court complaint alleges that Pincus and/or his company owned the limousine that transported the woman on the evenings she was sexually assaulted, and thus had common carrier status and breached the heightened duty of care owed to the woman.  (Doc. No. 3-5 at 18-19.)  By definition, a common carrier's activities are business pursuits.  "A common carrier is 'one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering services to the public generally.'"  *Lynch v. McStome and Lincoln Plaza Assoc.*, 548 A.2d 1276, 1279 (Pa. Super. Ct. 1988) (quoting *Kelly v. Gen. Elec. Co.*, 110 F. Supp. 4, 6 (E.D. Pa. 1953)).  Therefore, the factual allegations in this count do not trigger coverage.

14.  Given that the state court complaint fails to allege conduct that may potentially come within the policies' coverage and that Great Northern had no duty to defend Pincus, it follows that Great Northern had no duty to indemnify Pincus either.  *See Prudential Prop. & Cas. Ins. Co. v. Boyle*, No. 06-506, 2007 U.S. Dist. LEXIS 63690, at *12 (E.D. Pa. Aug. 29, 2007).

Pincus has not been found liable for conduct that actually falls within the scope of the policy, so liability coverage has not been triggered.[5]

15. I find that Pincus' "bad faith" claim pursuant to 42 Pa. Cons. Stat. § 8371 also fails. While "bad faith" is not defined in the statute, a number of courts have agreed that what constitutes bad faith is "any frivolous or unfounded refusal to pay proceeds of a policy." *Bostick v. ITT-Hartford Group, Inc.,* 56 F. Supp 2d 580, 586 (E.D. Pa. 1999). A bad faith claim necessarily fails when the court makes "a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). As described above, Great Northern had no duty to defend or indemnify Pincus; therefore, Great Northern did not act in bad faith in violation of § 8371 when it refused defense and liability coverage.

16. I find that there is no genuine issue as to any material fact in this matter, because all material facts are derived from the face of the underlying state court complaint and the actual details of the events and injuries are immaterial. *See Erie Ins. Exchange v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004). As a matter of law, Pincus is not entitled to any damages related to Great Northern's refusal to defend or indemnify him under the insurance policies with respect to

---

[5] Because I find that Pincus' alleged conduct may not potentially come within the policies' coverage and Great Northern had no duty to defend, it is unnecessary to inquire into the terms of the settlement agreement reached by Pincus to determine the theories of liability. *Cf. Pacific Indem. Co. v. Linn*, 766 F.2d 754, 766 (3d Cir 1985) ("[T]he duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed.").

any claims against him in the underlying complaint. Therefore, Great Northern's motion for summary judgment must be granted.

An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY PINCUS, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHUBB GROUP OF INSURANCE COMPANIES | : | NO. 08-1483 |
| and GREAT NORTHERN INSURANCE COMPANY | : | |

**O R D E R**

AND NOW, this 27th day of March, 2009, IT IS HEREBY ORDERED that the defendant's motion for summary judgment (Doc. No. 3) is GRANTED.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY PINCUS, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHUBB GROUP OF INSURANCE COMPANIES | : | NO. 08-1483 |
| and GREAT NORTHERN INSURANCE COMPANY | : | |

# **J U D G M E N T**

AND NOW, this 27th day of March, 2009, in accordance with the memorandum and order delivered this day, IT IS HEREBY ORDERED that JUDGMENT is entered for the defendant. The Clerk of Court is directed to CLOSE this matter for statistical purposes.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.